MCGHAN, APPELLANT, *v.* VETTEL, JUDGE, APPELLEE.

[Cite as *McGhan v. Vettel*, 122 Ohio St.3d 227, 2009-Ohio-2884.]

*Custody of children — Uniform Child Custody Jurisdiction and Enforcement Act — R.C. Chapter 3127 — Writ of prohibition to prevent modification of custody denied.*

(No. 2009-0044 — Submitted June 16, 2009 — Decided June 25, 2009.)

APPEAL from the Court of Appeals for Ashtabula County,

No. 2008-A-0036, 2008-Ohio-6063.

_____

**Per Curiam.**

{¶ 1}  This is an appeal from a judgment denying a writ of prohibition to prevent a common pleas court judge from proceeding to modify a child-custody determination previously made by a Georgia court.  Because the judge does not patently and unambiguously lack jurisdiction to so proceed, we affirm.

**Georgia Divorce Decree**

{¶ 2}  Appellant, Jennifer L. McGhan, f.k.a. Bonds ("McGhan"), married Christopher Bonds ("Bonds") in 1999 and had two children, Samantha, born in 2001, and Julianna, born in 2004.  In May 2006, a Georgia court granted McGhan and Bonds a divorce and awarded them joint legal custody of the children.  The court designated McGhan as the primary physical custodian of the children and granted Bonds liberal visitation rights.  Bonds relocated to Ohio, and in mid-June 2006, McGhan and the two children moved to Michigan.

**Michigan Litigation**

{¶ 3}  On October 17, 2006, while McGhan was asleep, her two-year-old child, Julianna, and another small child were found unsupervised outside her residence on a highway near a convenience store.  The children were nearly hit by

a truck, and convenience store workers called the police, who contacted a local children services agency. The children were not properly clothed and were very dirty. The residence was filthy, and McGhan failed to participate in a family-support program.

{¶ 4} This incident resulted in two separate cases being filed in Michigan. In a proceeding brought by Bonds to modify custody, support, and parenting time, the Michigan court granted a preliminary injunction preventing McGhan from removing the children from Michigan. In both that case and a separate neglect case instituted by the local Michigan children services agency, the Michigan court granted temporary custody of the children to Bonds in Ohio. In the neglect case, the Michigan court found that the conditions within McGhan's residence were inadequate to safeguard the children from harm. The neglect case was terminated, but the modification case remained open until it was dismissed on September 14, 2007. In the dismissal order, the Michigan court noted that the children had been placed with Bonds in November 2006 and that the court's dismissal of the case would allow him to file in Ohio for a change in custody. The children have lived with Bonds in Ohio since November 2006.

### Ohio and Georgia Custody Cases

{¶ 5} In March 2007, Bonds filed a notice of the Georgia decree with a request for modification of parental rights and responsibilities in the Ashtabula County Court of Common Pleas, Juvenile Division. The juvenile court dismissed the case for lack of jurisdiction.

{¶ 6} Five months later, Bonds filed a notice of the Georgia divorce decree, an emergency motion for placement of children, and a motion to modify parental rights and responsibilities for the minor children in the general division of the Ashtabula County Common Pleas Court. The common pleas court dismissed the case five days later because it did not want to usurp the Michigan

court's jurisdiction in the modification case, which was still pending at that time. The court's order stated:

**{¶ 7}** "It appears that the only reason the children have been living in the State of Ohio, is pursuant to the temporary order issued by the Michigan Court. Furthermore, the evidence giving rise to the original decision to award [Bonds] temporary custody would be available in Kalkaska County, Michigan, not here. Since the Michigan Court has already exercised jurisdiction, it would be inappropriate for this Court to attempt to usurp that jurisdiction, at this time."

**{¶ 8}** On September 14, 2007 – the same day that the Michigan court dismissed Bonds's modification case to permit him to file a change-of-custody action in Ohio – Bonds filed in the Ashtabula County Court of Common Pleas a notice of the Georgia divorce decree, an emergency motion for placement of children, a motion to modify parental rights and responsibilities for the minor children, and a motion for custody. Bonds requested that the common pleas court accept jurisdiction and modify the parties' divorce decree to award him custody of the children. The case was consolidated with an earlier case filed by McGhan for custody. Appellee, Judge Ronald W. Vettel of the common pleas court, granted Bonds's emergency motion and awarded him temporary custody of the children, pending further court order.

**{¶ 9}** In March 2008, Judge Vettel issued an order finding that the common pleas court had jurisdiction over the consolidated cases and scheduled a trial to make a custody determination. He made the following findings:

**{¶ 10}** "This Court finds that neither party resides in the state of original jurisdiction; that the minor children have been residents of Ashtabula County, Ohio, and have resided with [Bonds] since November 2006; and, no other State would have jurisdiction. The Court further finds that there is substantial evidence concerning the children's present or future care, protection, training, and personal relationships in Ashtabula County, Ohio."

**{¶ 11}** Shortly thereafter, a Georgia court stayed a contempt proceeding brought by McGhan against Bonds based on Judge Vettel's order holding that the Ohio court had jurisdiction over the parties and issues, which order it determined was "not in conflict with the terms of the State of Georgia's Uniform Child Custody Jurisdiction and Enforcement Act."

**Prohibition**

**{¶ 12}** A few months after Judge Vettel's order asserting jurisdiction over Bonds's custody-modification case, McGhan filed a petition in the Court of Appeals for Ashtabula County. McGhan sought a writ of prohibition to prevent Judge Vettel from proceeding in the underlying case. Judge Vettel filed a motion for summary judgment, and McGhan filed a memorandum in opposition. The court of appeals granted Judge Vettel's motion and denied the writ.

**{¶ 13}** This cause is now before us on McGhan's appeal as of right.

**{¶ 14}** McGhan claims entitlement to a writ of prohibition to prevent Judge Vettel from proceeding in the custody-modification case. To be entitled to the requested writ, McGhan had to establish that (1) Judge Vettel is about to exercise judicial or quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denying the writ will result in injury for which no adequate remedy exists in the ordinary course of law. *State ex rel. Furnas v. Monnin*, 120 Ohio St.3d 279, 2008-Ohio-5569, 898 N.E.2d 573, ¶ 10. Judge Vettel has exercised judicial authority in the underlying case.

**{¶ 15}** For the remaining requirements, "[i]f a lower court patently and unambiguously lacks jurisdiction to proceed in a cause, prohibition * * * will issue to prevent any future unauthorized exercise of jurisdiction and to correct the results of prior jurisdictionally unauthorized actions." *State ex rel. Mayer v. Henson*, 97 Ohio St.3d 276, 2002-Ohio-6323, 779 N.E.2d 223, ¶ 12.

**{¶ 16}** Conversely, "[i]n the absence of a patent and unambiguous lack of jurisdiction, a court having general subject-matter jurisdiction can determine its

own jurisdiction, and a party contesting that jurisdiction has an adequate remedy by appeal." *State ex rel. Plant v. Cosgrove*, 119 Ohio St.3d 264, 2008-Ohio-3838, 893 N.E.2d 485, ¶ 5.

{¶ 17} Therefore, the dispositive issue is whether Judge Vettel and the common pleas court patently and unambiguously lack jurisdiction over the pending custody-modification proceeding.

### Prohibition:  Jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act

{¶ 18} Judge Vettel and the common pleas court have basic statutory jurisdiction to determine custody matters.   See, e.g., R.C.  3109.04(A), 3105.21(A),  and  3105.011(A).   Notwithstanding  this  general  jurisdiction, McGhan claims that the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") patently and unambiguously divested Judge Vettel and the common pleas court of this jurisdiction.

{¶ 19} The UCCJEA is codified in Ohio in R.C. Chapter 3127.  R.C. 3127.17 provides the following procedure for determining when Ohio courts may modify a child-custody determination made by an out-of-state court:

{¶ 20} "Except as otherwise provided in section 3127.18 of the Revised Code,[1] a court of this state may not modify a child custody determination made by a court of another state unless the court of this state has jurisdiction to make an initial determination under division (A)(1) or (2) of section 3127.15 of the Revised Code and one of the following applies:

{¶ 21} "(A) The court of the other state determines that it no longer has exclusive, continuing jurisdiction under section 3127.16 of the Revised Code or a similar statute of the other state or that a court of this state would be a more

---

1.  R.C. 3127.18 authorizes Ohio courts to exercise temporary emergency jurisdiction over children under certain circumstances.

convenient forum under section 3127.21 of the Revised Code or a similar statute of the other state.

{¶ 22} "(B) The court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state."

{¶ 23} Therefore, an Ohio court can modify an out-of-state custody determination if (1) it has jurisdiction to make an initial child-custody determination under R.C. 3127.15(A)(1) or (2), and (2) one of the two statutory factors specified in R.C. 3127.17 is applicable.

{¶ 24} With regard to the first requirement, R.C. 3127.15(A) specifies the jurisdictional grounds for an Ohio court to make an initial determination in a child-custody proceeding. R.C. 3127.15(A)(1) authorizes an Ohio court to make this initial determination if Ohio "is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state." " 'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately preceding the commencement of a child custody proceeding * * *." R.C. 3127.01(B)(7).

{¶ 25} It is uncontroverted that on September 14, 2007, the day on which Bonds filed the underlying proceeding, Bonds had had custody of the children since November 2006, i.e., more than six consecutive months, in accordance with the Michigan court orders. Therefore, under the plain language of R.C. 3127.01(B)(7), Ohio was the home state for purposes of R.C. 3127.15(A)(1).

{¶ 26} McGhan claims in this appeal that the time the children spent living in Ohio while Bonds's first two Ohio actions were pending cannot be used to calculate the six-month period of time required by R.C. 3127.01(B)(7) to satisfy the "home state" definition. McGhan waived this argument, however, by

6

failing to raise it in the proceedings in the court of appeals. *State ex rel. Ohio Civ. Serv. Emps. Assn., AFSCME, Local 11, AFL-CIO v. State Emp. Relations Bd.*, 104 Ohio St.3d 122, 2004-Ohio-6363, 818 N.E.2d 688, ¶ 10 (in appeal from judgment granting writ of mandamus, appellant waived argument that it did not raise in the court of appeals); see also *State ex rel. Quarto Mining Co. v. Foreman* (1997), 79 Ohio St.3d 78, 81, 679 N.E.2d 706.

{¶ 27} In fact, the cases cited by McGhan are distinguishable because this case does not involve a parent absconding with a child to another state; instead, Bonds received custody of the children in Ohio only after a Michigan court held that removal of the children from McGhan's custody and their placement with Bonds in Ohio was appropriate. Cf. *In re Marriage of Sareen* (2007), 153 Cal.App.4th 371, 380, 62 Cal.Rptr.3d 687 ("we are persuaded a parent may not take a child to a jurisdiction, file a premature custody petition, and then use the time the child remains in that jurisdiction pending resolution of the petition to meet the six-month UCCJEA home state period, either in that custody proceeding or as a defense to the other parent's competing custody proceeding in another state. To do so would condone blatant forum-shopping, particularly here where it appears husband's actions were responsible for keeping [the child] in India after his filing of the divorce and custody actions"). As the court of appeals properly concluded, "the transfer of custody to Bonds was attributable to [McGhan's] own actions, not any devious conduct by Bonds." 2008-Ohio-6063, at ¶ 42.

{¶ 28} With regard to the second requirement for Judge Vettel to proceed in the custody-modification case, Judge Vettel expressly determined that Bonds, McGhan, and their children did not presently reside in Georgia. This determination satisfies R.C. 3127.17(B). Insofar as Judge Vettel may have resolved disputed facts to make this determination, McGhan's claim that the factual decision is improper is not cognizable in prohibition. See *State ex rel. Florence v. Zitter*, 106 Ohio St.3d 87, 2005-Ohio-3804, 831 N.E.2d 1003 (when

resolution of a claimed jurisdictional issue is dependent upon facts to be determined by the trial court, the court's ruling that it has jurisdiction is mere error for which extraordinary relief in prohibition is not the appropriate remedy); see also *Goldstein v. Christiansen* (1994), 70 Ohio St.3d 232, 238, 638 N.E.2d 541 (applying same rule to a prohibition claim based on the alleged lack of personal jurisdiction). McGhan's claim that our holding in *Rosen v. Celebrezze*, 117 Ohio St.3d 241, 2008-Ohio-853, 883 N.E.2d 420, requires a different result is incorrect. In *Rosen*, we emphasized that the pertinent facts were uncontroverted, and we resolved a purely legal question based on those uncontroverted facts. Id. at ¶ 50. McGhan does not suggest that the pertinent facts are undisputed here.

**{¶ 29}** Finally, McGhan erroneously claims that Judge Vettel patently and unambiguously lacks jurisdiction to proceed in the custody-modification case because he ignored the two Ohio court dismissals of Bonds's previous custody actions. Although not entirely clear from either the proceedings below or her initial merit brief, McGhan seems to contend that the first two dismissals – one by the juvenile court and one by the common pleas court – barred Bonds's third action, which is currently pending. In essence, although she disclaims this in her reply brief, McGhan raises a res judicata defense. But "*res judicata* is not a basis for prohibition because it does not divest a trial court of jurisdiction to decide its applicability and it can be raised adequately by postjudgment appeal." *State ex rel. Soukup v. Celebrezze* (1998), 83 Ohio St.3d 549, 550, 700 N.E.2d 1278; *State ex rel. Miller v. Reed* (1999), 87 Ohio St.3d 159, 160, 718 N.E.2d 428. In addition, as the court of appeals concluded, neither of the prior two cases analyzed the UCCJEA provisions, and these cases did not preclude Judge Vettel from proceeding in the underlying case. The Georgia court determined that the Ohio proceeding complies with that state's version of the UCCJEA, and the Michigan court expressly dismissed its case so that Bonds could file the custody-modification proceeding in Ohio.

**{¶ 30}** Therefore, Judge Vettel was generally authorized under the plain language of R.C. 3127.17 to exercise jurisdiction in Bonds's custody-modification case. Neither Judge Vettel nor the common pleas court patently and unambiguously lacks jurisdiction to proceed in the underlying custody-modification case, and McGhan has an adequate remedy in the ordinary course of the law by way of appeal to raise her jurisdictional claims. For these reasons, McGhan is not entitled to the requested extraordinary writ of prohibition, and we affirm the judgment of the court of appeals denying the writ.

Judgment affirmed.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Biviano Law Firm and William R. Biviano, for appellant.

Thomas L. Sartini, Ashtabula County Prosecuting Attorney, and Rebecca K. Divoky, Assistant Prosecuting Attorney, for appellee.

_____